FARWELL v KEATON

Docket No. 55696. Argued May 6, 1975 (Calendar No. 2).—Decided
April 1, 1976. Rehearing denied 397 Mich 958.

Richard Murray Farwell and David Siegrist, companions for an
evening of recreation, were chased by Terry Ingland, Robert
Brock, Jr., Donald Keaton, Daniel Keaton, and at least two
others. Siegrist escaped but Farwell was caught and beaten by
the pursuers. Ice was applied to Farwell's head, and Siegrist
and Farwell then visited several drive-in restaurants. Farwell
later went to sleep in the back seat of his car, and Siegrist
drove it to the house of Farwell's grandparents and left it in
the driveway, after unsuccessfully attempting to rouse Farwell.
Farwell was found by his grandparents in the morning and
taken to a hospital, where he died of an epidural hematoma.
Richard M. Farwell, Jr., administrator of the estate of Richard
Murray Farwell, deceased, brought an action for wrongful
death against David Siegrist, Donald Keaton, Daniel Keaton,
Terry Ingland, and Robert Brock, Jr., in the Wayne Circuit
Court, Robert E. Cunningham, J. The jury returned a verdict of
no cause of action for defendants Brock and Daniel Keaton and
a verdict against defendant Siegrist. A default judgment was
entered against defendants Ingland and Donald Keaton. De-
fendant Siegrist appealed to the Court of Appeals, McGregor,
P. J., and J. H. Gillis and O'Hara, JJ., which reversed (Docket
No. 14735). Plaintiff appeals. *Held:*

1. The existence of a duty of one person to assist another is
ordinarily a question of law, but there are factual circum-
stances which give rise to a duty and the existence of those
facts must be determined by a jury.

2. There is a legal duty of every person to avoid any affirma-
tive acts which may make a situation worse for another who is
in distress. If defendant Siegrist attempted to aid the decedent,
a duty arose which required Siegrist to act as a reasonable
person in protecting the decedent's interests, and it was for the
jury to determine whether the defendant did attempt aid.

REFERENCE FOR POINTS IN HEADNOTES
[1–7] 57 Am Jur 2d, Negligence §§ 33–53.

3. Farwell and Siegrist were companions engaged in a common undertaking; there was a special relationship between the parties. Because Siegrist knew or should have known of the peril Farwell was in and could render assistance without endangering himself he had an affirmative duty to come to Farwell's aid.

4. The jury found that defendant Siegrist did not act reasonably in attempting to aid the decedent and that Siegrist's negligence was the proximate cause of the decedent's death.

The verdict is reinstated.

Justice Fitzgerald, Justice Coleman concurring, would affirm the judgment of the Court of Appeals for the following reasons:

1. This is not the appropriate case to establish a standard of conduct requiring one to assume legally the duty of insuring the safety of another. The facts within defendant's knowledge in no way indicated that immediate medical attention was necessary, the relationship between the parties imposed no affirmative duty to render assistance, and the injury was not caused by defendant.

2. Defendant Siegrist had no obligation to assume, nor did he assume, a duty of rendering medical or other assistance to the decedent. His actions did not indicate that he "volunteered" to aid Farwell, and consequently there could be no discontinuance of aid which left Farwell in a worse position than when the volunteering allegedly occurred.

3. Defendant Siegrist did not act unreasonably in the circumstances in permitting Farwell to spend the night asleep in the back seat of his car, where there was nothing to indicate to a layman that Farwell had suffered an injury which required immediate medical attention.

4. The question whether a legal duty is owed by one party to another is one for the court, not the jury. The Court of Appeals properly decided as a matter of law that defendant owed no duty to the deceased.

51 Mich App 585; 215 NW2d 753 (1974) reversed.

## Opinion of the Court

1. Negligence—Duty of Care—Question of Law—Question of Fact.

The existence of a duty of one person to another is ordinarily a question of law in a negligence case; however, where there are factual circumstances which would give rise to a duty, the existence of those facts must be determined by a jury.

2. NEGLIGENCE—INJURED PERSONS—ASSISTANCE—DUTY OF CARE.

Every person has a duty to avoid any affirmative acts which may make a situation worse for another in distress; if a defendant attempts to aid an injured person a duty arises which requires the defendant to act as a reasonable person and he is liable for a failure to use reasonable care for the protection of the injured person's interests.

3. NEGLIGENCE—INJURED PERSONS—ASSISTANCE—DUTY OF CARE.

Sufficient evidence was produced for a jury to find that a defendant breached a legal duty owed to a decedent where the defendant knew the decedent had been in a fight, the defendant attempted to relieve the decedent's pain by applying an ice pack to his head, the decedent crawled in the back seat of the car defendant was driving and laid down, defendant later attempted to rouse the decedent was unable to do so and defendant failed to tell anyone that the injured decedent was asleep in the car although he later admitted knowing the decedent was severely injured.

4. NEGLIGENCE—INJURED PERSONS—DUTY OF CARE—COMMON UNDERTAKING—SOCIAL COMPANIONS.

Social companions engaged in a common undertaking assume a special relationship which creates an affirmative duty of one to render assistance to another in peril if he can do so without endangering himself.

DISSENTING OPINION

COLEMAN and FITZGERALD, JJ.

5. NEGLIGENCE—INJURED PERSONS—ASSISTANCE—DUTY OF CARE.

*Defendant, a companion of a decedent, had no obligation to assume, nor did he assume, a duty of rendering medical or other assistance to the decedent where defendant and decedent were chased by a group of men, defendant escaped but the decedent was caught and beaten, the decedent never complained of pain and expressed a desire to retaliate against his attackers, defendant left decedent, asleep, in the decedent's automobile parked in the driveway of the decedent's grandparents' house, the decedent died of an epidural hematoma a few days later, and only a qualified physician would have reason to suspect that decedent had suffered an injury which required immediate medical attention.*

6. NEGLIGENCE—DUTY OF CARE—MEDICAL ASSISTANCE.

> *The posture of a wrongful death case in which a decedent's companion failed to obtain medical assistance after the decedent was beaten by a group of men, where the facts within the companion's knowledge in no way indicated that immediate medical attention was necessary, does not permit the Supreme Court to create a legal duty upon one to render assistance to another injured or imperiled party where the initial injury was not caused by the person upon whom the duty is sought to be imposed.*

7. NEGLIGENCE—LEGAL DUTY—QUESTION OF LAW.

> *The principle that the question of negligence is one of law for the court only when the facts are such that all reasonable men must draw the same conclusion becomes operative only after the court establishes that a legal duty is owed by one party to another.*

*Young, O'Rourke, Bruno & Bunn* (by *James C. Bruno*), for plaintiff.

*Martin, Bohall, Joselyn, Halsey, Rowe & Jamieson, P. C.* (by *William G. Jamieson*), for defendant Siegrist.

LEVIN, J. There is ample evidence to support the jury determination that David Siegrist failed to exercise reasonable care after voluntarily coming to the aid of Richard Farwell and that his negligence was the proximate cause of Farwell's death. We are also of the opinion that Siegrist, who was with Farwell the evening he was fatally injured and, as the jury found, knew or should have known of his peril, had an affirmative duty to come to Farwell's aid.[1]

---

[1] The trial judge instructed the jury to determine whether Siegrist had voluntarily undertaken to render aid and, if he had, whether he acted reasonably in discharging that duty. Whether Siegrist be charged with the duty of a voluntary rescuer or the duty of a companion, the standard of care—whether he acted reasonably under all the circumstances—is the same and the instruction given was adequate.

I

On the evening of August 26, 1966, Siegrist and Farwell drove to a trailer rental lot to return an automobile which Siegrist had borrowed from a friend who worked there. While waiting for the friend to finish work, Siegrist and Farwell consumed some beer.

Two girls walked by the entrance to the lot. Siegrist and Farwell attempted to engage them in conversation; they left Farwell's car and followed the girls to a drive-in restaurant down the street.

The girls complained to their friends in the restaurant that they were being followed. Six boys chased Siegrist and Farwell back to the lot. Siegrist escaped unharmed, but Farwell was severely beaten. Siegrist found Farwell underneath his automobile in the lot. Ice was applied to Farwell's head. Siegrist then drove Farwell around for approximately two hours, stopping at a number of drive-in restaurants. Farwell went to sleep in the back seat of his car. Around midnight Siegrist drove the car to the home of Farwell's grandparents, parked it in the driveway, unsuccessfully attempted to rouse Farwell, and left. Farwell's grandparents discovered him in the car the next morning and took him to the hospital. He died three days later of an epidural hematoma.

At trial, plaintiff contended that had Siegrist taken Farwell to the hospital, or had he notified someone of Farwell's condition and whereabouts, Farwell would not have died. A neurosurgeon testified that if a person in Farwell's condition is taken to a doctor before, or within half an hour after, consciousness is lost, there is an 85 to 88 per cent chance of survival. Plaintiff testified that Siegrist told him that he knew Farwell was badly injured and that he should have done something.

The jury returned a verdict for plaintiff and awarded $15,000 in damages. The Court of Appeals reversed, finding that Siegrist had not assumed the duty of obtaining aid for Farwell and that he neither knew nor should have known of the need for medical treatment.

## II

Two separate, but interrelated questions are presented:

A. Whether the existence of a duty in a particular case is always a matter of law to be determined solely by the Court?

B. Whether, on the facts of this case, the trial judge should have ruled, as a matter of law, that Siegrist owed no duty to Farwell?

### A.

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser, Torts (4th ed), § 53, p 324.

The existence of a duty is ordinarily a question of law. However, there are factual circumstances which give rise to a duty. The existence of those facts must be determined by a jury.[2] In *Bonin v Gralewicz,* 378 Mich 521, 526–527; 146 NW2d 647 (1966), this Court reversed a directed verdict of no cause of action where the trial court had deter-

---

[2] Of course, merely labeling a question as one of "law" or "fact" does not solve the dilemma.

"No two terms of legal science have rendered better service than 'law' and 'fact'. * * * They readily accommodate themselves to any meaning we desire to give them. * * * What judge has not found refuge in them? The man who could succeed in defining them would be a public enemy." Green, Judge and Jury, p 270.

mined as a matter of law that the proofs were insufficient to establish a duty of care:

"Usually, in negligence cases, whether a duty is owed by the defendant to the plaintiff does not require resolution of fact issues. However, in some cases, as in this one, fact issues arise. When they do, they must be submitted to the jury, our traditional finders of fact, for ultimate resolution, and they must be accompanied by an appropriate conditional instruction regarding defendant's duty, conditioned upon the jury's resolution of the fact dispute."

This same rule was stated more recently in *Davis v Thornton,* 384 Mich 138, 142; 180 NW2d 11 (1970). "The trial judge in this case determined the defendant owed the plaintiff no duty. We believe this conclusion could properly be made only by a jury."

## B.

Without regard to whether there is a general duty to aid a person in distress, there is a clearly recognized legal duty of every person to avoid any affirmative acts which may make a situation worse. "[I]f the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility. * * * Such a defendant will then be liable for a failure to use reasonable care for the protection of the plaintiff's interests." Prosser, *supra,* § 56, pp 343–344. "Where performance clearly has been begun, there is no doubt that there is a duty of care." *Id* 346.

In a case such as the one at bar, the jury must determine, after considering all the evidence, whether the defendant attempted to aid the vic-

tim. If he did, a duty arose which required defend-
ant to act as a reasonable person.

"Before any duty, or any standard of conduct
may be set, there must first be proof of facts which
give rise to it", Prosser, *supra,* § 37, p 205.
Whether those facts have been proved is a ques-
tion for the jury.

"Professor Green argues that it is impossible in the
nature of things for the duty problem to be decided by
the jury, for if the court sends the issue to the jury this
'necessarily operates as a ruling that there is a duty or
else he would never have submitted the case to the jury
at all.' But that is not so. As in the case of any other
issue, the judge will leave the question to the jury if it
is a debatable one, but the jury may decide that (for
example) plaintiff was beyond the apparent scope of
danger from defendant's conduct, and so beyond the
scope of the duty to perform it carefully, even where
they are quite ready to find defendant's conduct clearly
below the standard of reasonable care." 2 Harper &
James, The Law of Torts, p 1060.

There was ample evidence to show that Siegrist
breached a legal duty owed Farwell. Siegrist knew
that Farwell had been in a fight, and he attempted
to relieve Farwell's pain by applying an ice pack
to his head. While Farwell and Siegrist were rid-
ing around, Farwell crawled into the back seat and
laid down. The testimony showed that Siegrist
attempted to rouse Farwell after driving him
home but was unable to do so.

In addition, Farwell's father testified to admis-
sions made to him by Siegrist:

"*Q:* Witness, just before the jury was excused, I asked
whether you had any conversation with Mr. Siegrist
after this event occurred. You answered, 'Yes, the day

after in the living room of Mrs. Grenier's [the deceased's mother] home.' Then, the jury was excused, and we made a special record, and now I would like to ask you some questions that I asked and that you answered out of the presence of the jury.

"*A:* Yes.

"*Q:* What did Mr. Siegrist say, how did the conversation go?

"*A:* I asked him why he left Ricky [the deceased] in the driveway of his grandfather's home.

"*Q:* What did he say?

"*A:* He said, *'Ricky was hurt bad, I was scared.'* I said, *'Why didn't you tell somebody, tell his grandparents?'* He said, *'I know I should have, I don't know.'* " (Emphasis added.)

The question at trial came down to whether Siegrist acted reasonably under all the circumstances. "The *law* of negligence is that an actor is held to the standard of a reasonable man. The determination of the facts upon which the judgment of reasonableness is based is admittedly for the jury." *Davis v Thornton,* 384 Mich 138, 142–143; 180 NW2d 11 (1970).

The jury in this case found that Siegrist did not act reasonably, and that his negligence was the proximate cause of Farwell's death.

" ' "In considering the question whether defendant was entitled to a directed verdict, the testimony must be construed as strongly as possible in favor of the plaintiff. * * * The specific inquiry is whether this Court can say, as a matter of law, giving to plaintiff's proofs the strongest probative force to which they are entitled, that the evidence was not sufficient to justify submitting to the jury the questions of defendant's negligence and its knowledge or notice of the situation." ' " *Clark v Dalman,* 379 Mich 251, 263; 150 NW2d 755 (1967).

## III

Siegrist contends that he is not liable for failure to obtain medical assistance for Farwell because he had no duty to do so.

Courts have been slow to recognize a duty to render aid to a person in peril.[3] Where such a duty has been found, it has been predicated upon the existence of a special relationship between the parties;[4] in such a case, if defendant knew or should have known of the other person's peril,[5] he

---

[3] " * * * [T]he law has persistently refused to recognize the moral obligation of common decency and common humanity, to come to the aid of another human being who is in danger * * * . The remedy in such cases is left to the 'higher law' and the 'voice of conscience,' which, in a wicked world, would seem to be singularly ineffective either to prevent the harm or to compensate the victim." Prosser, Torts (4th ed), § 56, pp 340–341.

"At the other end of the spectrum are cases where the peril to the plaintiff has come from a source in no way connected with defendant's conduct or enterprises or undertakings, past or present, but where the defendant has it in his power by taking some reasonable precaution to remove the peril. Here the law has traditionally found no duty, however reprehensible and unreasonable the defendant's failure to take the precaution may be. * * * There is no legal obligation to be a Good Samaritan." 2 Harper & James, The Law of Torts, § 18.6, p 1046.

[4] Carriers have a duty to aid passengers who are known to be in peril [*Yu v New York, N H & H R Co,* 145 Conn 451; 144 A2d 56 (1958)]; employers similarly are required to render aid to employees [*Anderson v Atchison, T & S F R Co,* 333 US 821; 68 S Ct 854; 92 L Ed 1108 (1948); *Bessemer Land & Improvement Co v Campbell,* 121 Ala 50; 25 So 793 (1898); *Carey v Davis,* 190 Iowa 720; 180 NW 889 (1921)]; innkeepers to their guests [*West v Spratling,* 204 Ala 478; 86 So 32 (1920)]; a jailer to his prisoner [*Farmer v State,* 224 Miss 96; 79 So 2d 528 (1955)].

Maritime law has imposed a duty upon masters to rescue crewmen who fall overboard. *Harris v Pennsylvania R Co,* 50 F2d 866 (CA 4, 1931).

*See* Prosser, Torts, *supra;* 2 Harper & James, *supra,* pp 1048–1049.

[5] In the following cases the court specifically mentions not only the defendant's knowledge of but also his apparent indifference toward the other person's peril: *Southern R Co v Sewell,* 18 Ga App 544; 90 SE 94 (1916); *Adams v Chicago G W R Co,* 156 Iowa 31; 135 NW 21 (1912); *Cincinnati, N O & T P R Co v Marrs' Administratrix,* 119 Ky 954; 85 SW 188 (1905); *Fagg's Administrator v Louisville & N R Co,* 111 Ky 30; 63 SW 580 (1901); *Depue v Flatau,* 100 Minn 299; 111 NW 1 (1907); *Whitesides v Southern R Co,* 128 NC 229; 38 SE 878 (1901).

is required to render reasonable care under all the circumstances.[6]

In *Depue v Flatau,* 100 Minn 299; 111 NW 1 (1907), the Supreme Court of Minnesota reversed an order of the trial court dismissing the cause of action and said that if the defendants knew their dinner guest was ill, it was for the jury to decide whether they were negligent in refusing his request to spend the night and, propping him on his wagon with the reins thrown over his shoulder, sending him toward home.

The Sixth Circuit Court of Appeals, in *Hutchinson v Dickie,* 162 F2d 103, 106 (CA 6, 1947), said that a host had an affirmative duty to attempt to rescue a guest who had fallen off his yacht. The host controlled the only instrumentality of rescue. The Court declared that to ask of the host anything less than that he attempt to rescue his guest would be "so shocking to humanitarian considerations and the commonly accepted code of social conduct that the courts in similar situations have had no difficulty in pronouncing it to be a legal obligation".

Farwell and Siegrist were companions on a social venture. Implicit in such a common undertaking is the understanding that one will render assistance to the other when he is in peril if he can do so without endangering himself. Siegrist knew or should have known when he left Farwell, who was badly beaten and unconscious, in the back seat of his car that no one would find him before morning. Under these circumstances, to say that Siegrist had no duty to obtain medical assistance or at least to notify someone of Farwell's condition and whereabouts would be "shocking to humanitarian considerations" and fly in the face

---

[6] Prosser, *supra,* p 343.

of "the commonly accepted code of social conduct".[7] "[C]ourts will find a duty where, in general, reasonable men would recognize it and agree that it exists."[8]

Farwell and Siegrist were companions engaged in a common undertaking; there was a special relationship between the parties. Because Siegrist knew or should have known of the peril Farwell was in and could render assistance without endangering himself he had an affirmative duty to come to Farwell's aid.

The Court of Appeals is reversed and the verdict of the jury reinstated.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

FITZGERALD, J. The unfortunate death of Richard Farwell prompted this wrongful death action brought by his father against defendant, David Siegrist, a friend who had accompanied Farwell during the evening in which the decedent received injuries which ultimately caused his death three days later. The question before us is whether the defendant, considering his relationship with the decedent and the activity they jointly experienced on the evening of August 26–27, 1966, by his conduct voluntarily or otherwise assumed, or should have assumed, the duty of rendering medical or other assistance to the deceased. We find that defendant had no obligation to assume, nor did he assume, such a duty.

---

[7] *Hutchinson v Dickie,* 162 F2d 103, 106 (CA 6, 1947).

[8] Prosser, *supra,* § 53, p 327.

The facts of the case are accurately set forth in the Court of Appeals opinion.

"Factually, it appears that, on August 26, 1966, Richard Murray Farwell, deceased 18-year-old son of the plaintiff, visited the home of his friend, David Siegrist, a 16-year-old; that evening they drove to a trailer rental lot, where Siegrist was returning an automobile he had borrowed from a friend who was employed by the rental agency.

"Siegrist and Farwell planned to wait in the car until the friend had finished work and then 'drive around,' stopping at various restaurants and drive-ins. While they were waiting, Siegrist estimated that they consumed 'four or five' beers each.

"Shortly before nine o'clock p.m., two teenage girls walked past the car. After an unsuccessful attempt to engage them in conversation, Farwell left the car and followed the girls; Siegrist got out of the car and followed Farwell.

"When the girls reached a restaurant a short distance down the street, they apparently complained to those present that they were being followed. Defendants Ingland, Brock, Donald Keaton, Daniel Keaton, and at least two others in the restaurant began to chase Farwell and Siegrist, both of whom ran back to the trailer lot.

"Siegrist escaped by ducking into the trailer rental office, where he requested those inside to assist Farwell. They stepped out of the office and were confronted by the group which had been chasing Siegrist and Farwell. The two groups faced each other, but no violence ensued, and the two groups scattered.

"It was then discovered for the first time that Farwell had been caught and beaten by those who had been pursuing him and Siegrist; Farwell was found underneath his automobile in the lot.

"Farwell was taken to the trailer rental office, where Siegrist gave him a plastic bag full of ice for his injuries. Shortly thereafter, Farwell and Siegrist left the rental office and, between ten o'clock p.m. and midnight, they visited four different drive-in restau-

rants. While enroute from the third to the fourth
restaurant, Farwell stated that he wanted to lie down,
climbed into the back seat, and went to sleep. Around
midnight, Siegrist drove the car to the home of Far-
well's grandparents, parked it in the driveway, and
attempted to rouse Farwell. When the latter merely
made a sound as if 'in a deep sleep', Siegrist left with a
friend who had followed him to the grandparents'
house. The next morning, Farwell was found by his
grandparents, apparently taken to a hospital, and died
of an epidural hematoma.

"At the close of plaintiff's proofs, defendant Siegrist
moved for a directed verdict on the grounds that he had
no duty to obtain medical assistance for Farwell as a
matter of law. In the alternative, the motion was based
upon the proposition that plaintiff failed to establish
that any conduct on the part of Siegrist proximately
caused Farwell's death. The motion was denied." 51
Mich App 585, 587–588.

Following the jury verdict of $15,000 in favor of
the plaintiff, defendant, arguing that the verdict
was inconsistent with the weight of the evidence,
moved for and was denied a judgment notwith-
standing the verdict. The decision of the trial
court was reversed by the Court of Appeals which
found that the defendant never assumed, voluntar-
ily or otherwise, the duty of obtaining medical
assistance for the deceased. The Court stated that
the facts in no way indicated that defendant knew,
or should have known, that immediate medical
attention was required. Consequently, as a matter
of law the Court determined that defendant was
under no duty to obtain medical treatment for the
decedent.

Plaintiff argues that once having voluntarily
undertaken the duty of caring for decedent, de-
fendant could not discontinue such assistance if, in
so doing, he left the decedent in a worse position
than when such duty was assumed. Defendant's

knowledge of the seriousness of decedent's injury
and the failure to advise decedent's grandparents,
the close personal relationship that existed be-
tween defendant and the decedent, and the suppo-
sition that the decedent relied upon defendant for
assistance leads plaintiff to conclude that defend-
ant did not act "with the reasonable prudence and
care of a reasonable man in the same or like
circumstances". Defendant's position is that there
was no volunteered assumption of duty to care for
the safety of the decedent. He argues that the
facts within his knowledge on the evening of Au-
gust 26, 1966, and the evidence introduced at trial
failed to establish that defendant should have seen
that Richard Farwell had suffered a potentially
fatal injury requiring immediate attention.

Defendant did not voluntarily assume the duty
of caring for the decedent's safety. Nor did the
circumstances which existed on the evening of
August 26, 1966, impose such a duty. Testimony
revealed that only a qualified physician would
have reason to suspect that Farwell had suffered
an injury which required immediate medical at-
tention. The decedent never complained of pain
and, in fact, had expressed a desire to retaliate
against his attackers. Defendant's inability to
arouse the decedent upon arriving at his grandpar-
ents' home does not permit us to infer, as does
plaintiff, that defendant knew or should have
known that the deceased was seriously injured.[1]

---

[1] It is at this point—plaintiff's unsuccessful attempt to arouse the
decedent in the driveway—that counsel, during oral argument, be-
lieves that defendant volunteered to aid the decedent. Yet no affirma-
tive act by defendant indicated that he assumed the responsibility of
rendering assistance to the decedent. Consequently, there could be no
*discontinuance* of aid or protection which left decedent in a worse
position than when the alleged "volunteering" occurred. This would
make operative the concession of plaintiff that where no duty is owed,
the refusal to act cannot form the basis for an action in negligence.

While it might have been more prudent for the defendant to insure that the decedent was safely in the house prior to leaving, we cannot say that defendant acted unreasonably in permitting Farwell to spend the night asleep[2] in the back seat of his car.

The close relationship between defendant and the decedent is said to establish a legal duty upon defendant to obtain assistance for the decedent. No authority is cited for this proposition other than the public policy observation that the interest of society would be benefited if its members were required to assist one another. This is not the appropriate case to establish a standard of conduct requiring one to legally assume the duty of insuring the safety of another. Recognizing that legal commentaries have expressed moral outrage at those decisions[3] which permit one to refuse aid to another whose life may be in peril, we cannot say that, considering the relationship between these two parties and the existing circumstances, defendant acted in an unreasonable manner.[4]

[2] Defendant had no way of knowing that it was the severity of the head injury suffered by the decedent which caused him to crawl in the back seat and apparently fall asleep. The altercation combined with the consumption of several beers could easily permit defendant to conclude that decedent was simply weary and desired to rest.

[3] The most notable of which include: *Osterlind v Hill,* 263 Mass 73; 160 NE 301; 56 ALR 1123 (1928); *Yania v Bigan,* 397 Pa 316; 155 A2d 343 (1959); and *Handiboe v McCarthy,* 114 Ga App 541; 151 SE2d 905 (1966).

[4] Were a special relationship to be the basis of imposing a legal duty upon one to insure the safety of another, it would most probably take the form of "co-adventurers" who embark upon a hazardous undertaking with the understanding that each is mutually dependent upon the other for his own safety. There is no evidence to support plaintiff's position that decedent relied upon defendant to provide any assistance whatsoever. A situation where two persons are involved in an altercation provoked by the party ultimately injured, the extent of which was unknown to the other, whose subsequent conduct included drinking beer and a desire to retaliate against his attackers would not fall within this category.

Plaintiff believes that a legal duty to aid others should exist where such assistance greatly benefits society and only a reasonable burden is imposed upon those in a position to help. He contends further that the determination of the existence of a duty must rest with the jury where questions of foreseeability and the relationship of the parties are primary considerations.

It is clear that defendant's nonfeasance, or the "passive inaction or a failure to take steps to protect [the decedent] from harm"[5] is urged as being the proximate cause of Farwell's death. We must reject plaintiff's proposition which elevates a moral obligation to the level of a legal duty where, as here, the facts within defendant's knowledge in no way indicated that immediate medical attention was necessary and the relationship between the parties imposes no affirmative duty to render assistance. See *Steckman v Silver Moon, Inc,* 77 SD 206; 90 NW2d 170; 64 ALR2d 1171 (1958). The posture of this case does not permit us to create a legal duty upon one to render assistance to another injured or imperiled party where the initial injury was not caused by the person upon whom the duty is sought to be imposed.

The relationship of the parties and the question of foreseeability does not require that the jury, rather than the court, determine whether a legal duty exists. We are in agreement with the general principle advanced by plaintiff that the question of negligence is one of law for the court only when the facts are such that all reasonable men must draw the same conclusion.[6] However, this principle becomes operative only after the court establishes

---

[5] Prosser, Torts (4th ed), § 56, pp 338–339.

[6] *McCullough v Ward Trucking Co,* 368 Mich 108; 117 NW2d 167 (1962); *Barnebee v Spence Brothers,* 367 Mich 46; 116 NW2d 49 (1962).

that a legal duty is owed by one party to another. Prosser's analysis of the role of the court and jury on questions of legal duty bears repeating:

"The existence of a duty. In other words, whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other— or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. * * * A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant." Prosser, Torts (4th ed), § 37, p 206.

Michigan recognizes that the question of duty is to be resolved by the court rather than the jury. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970).

The Court of Appeals properly decided as a matter of law that defendant owed no duty to the deceased.

We would affirm.

Coleman, J., concurred with Fitzgerald, J.