ESCOBAR v BRENT GENERAL HOSPITAL

Docket No. 49569. Submitted March 9, 1981, at Detroit.—Decided June 4, 1981.

Victoria Escobar was employed by Brent General Hospital and lived with her husband, Jose, in a house owned by the hospital and located behind the hospital and separated from it by the hospital parking lot. Late one evening the Escobars returned home from shopping and parked the car in the driveway adjacent to their home. After Mrs. Escobar entered the house, an unknown black male approached Mr. Escobar, announced a "stickup" and forced Mr. Escobar into the house at gunpoint. Inside the house, a scuffle occurred and Mrs. Escobar was shot in the shoulder. The Escobars brought an action against the hospital in the Wayne Circuit Court, alleging that the hospital 1) knowingly failed to provide sufficient security personnel, 2) failed to sufficiently inspect the security of the premises, 3) failed to provide an alternative to Mrs. Escobar's exposing herself to the known dangers, and 4) knew of the dangers and failed to provide for plaintiffs' safety. Mrs. Escobar testified at length about other crimes committed in the area. The court, James A. Hathaway, J., granted summary judgment for failure to state a claim for which relief can be granted, holding that defendant owed no duty to plaintiffs to protect against the kind of sudden and unforeseeable injury Mrs. Escobar suffered. Plaintiffs appeal. *Held:*

A motion for summary judgment for failure to state a claim for which relief can be granted is to be tested by the pleadings alone and tests the legal basics of the complaint, not whether it can be factually supported. A landlord has a basic duty to protect tenants from potential criminal activity. However, the facts disclose a series of crimes beginning outside the plaintiffs' home. Nothing suggests that the home was improperly main-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment §§ 3, 13.
[2] 57 Am Jur 2d, Negligence § 66 *et seq.*
[3, 4] 57 Am Jur 2d, Negligence §§ 195, 206, 207, 211, 212, 222.
[5] 57 Am Jur 2d, Negligence § 205.

tained or insufficiently lighted. Under the circumstances the hospital had no duty to provide continuous security.

Affirmed.

1. JUDGMENT — SUMMARY JUDGMENT — PLEADING — COURT RULES.

A motion for summary judgment for failure to state a claim for which relief can be granted is to be tested by the pleadings alone and tests the legal basis of the complaint, not whether it can be factually supported (GCR 1963, 117.2[1]).

2. NEGLIGENCE — UNREASONABLE RISK OF HARM — CRIMINAL LAW.

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm even though such conduct is criminal.

3. NEGLIGENCE — TORTS — CRIMINAL LAW.

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

4. NEGLIGENCE — TORTS — CRIMINAL LAW.

An act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby if the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent.

5. NEGLIGENCE — DUTY OF CARE.

The question of duty, in a negligence action, is generally decided by the court as a matter of law; however, a jury, properly instructed by the court, should examine the issue of whether a duty exists where the facts adduced at trial are in dispute and give rise to a reasonable difference of opinion as to the foreseeability of a particular risk and the reasonableness of a defendant's conduct in regard to it.

*David B. Grant, P.C.,* for plaintiffs.

*Kitch, Suhrheinrich, Smith, Saurbier & Drut-chas, P.C. (by Anthony G. Arnone),* for defendant.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and D. C. RILEY, JJ.

M. J. KELLY, J. Plaintiffs appeal as of right from a decision of the lower court granting the defendant's motion for summary judgment, pursuant to GCR 1963, 117.2(1), on the ground that the complaint failed to state a cause of action as a matter of law.

At the time the incident leading to this cause of action arose, plaintiff Victoria Escobar was employed as a nurse at the defendant hospital. The hospital owned the house in which the plaintiffs resided. It was one of approximately five homes located on Fairfield Street in the City of Detroit, which were leased by the hospital to its employees. The houses were located behind the hospital and separated from the hospital by an adjacent parking area. The houses were serviced by the hospital's maintenance people and it partially reserved the basement of plaintiffs' house as a storage area for old records.

At approximately 11:50 p.m. on the evening of October 27, 1977, the Escobars returned home from grocery shopping and parked their car in the driveway directly adjacent to their home. After Mrs. Escobar entered the home with the couple's baby, Mr. Escobar returned to the car to bring in the groceries. While Mr. Escobar was unloading the groceries from the trunk, an unknown black male approached, announced that this was a "stickup" and forced Mr. Escobar back into the house at gunpoint.

Once inside the house, the assailant forced the Escobars to lie on the floor, took their wallets and

searched the premises. The assailant ordered the couple into the bedroom, forced them to undress and attempted to force Mrs. Escobar to engage in a sexual act with him. Mrs. Escobar then kicked the assailant and both plaintiffs tried to subdue him. The effort was unsuccessful, however, and in the ensuing struggle Mrs. Escobar suffered a gunshot wound to the left shoulder. The assailant then fled and has not been apprehended.

The parking lot behind the house was illuminated at night by lights located on top of the hospital which shine in the direction of the parking area and the rear of plaintiffs' house. The extent of the illumination is an area of dispute. The defendant also employed one security guard who patrolled in and around the hospital grounds. The night of the attack, the defendant's guard had apparently gone off duty shortly before the incident took place.

The area in which the house and the hospital are located was alleged by Mrs. Escobar to be a high crime area. Mrs. Escobar testified at length as to hearsay accounts of purse snatchings, assaults, larcenies and robberies committed on hospital employees and patients on or near the hospital grounds around the time of the instant attack. Further, a number of the other houses leased by the hospital had been subject to breaking and enterings at or about the time of this incident, according to Mrs. Escobar.

On March 15, 1978, plaintiffs filed the instant suit, asserting five specifications of alleged negligence:

"(a) Defendant failed and omitted although knowing the perils to which Plaintiff and others were exposed, negligently and carelessly failed and omitted to hire

proper and sufficient and competent personel *[sic]* to maintain the security of said premises.

"(b) Failed to conduct reasonable inspections of the security of said premises.

"(c) Failed to provide an alternative to plaintiff *[sic]* exposing herself to such peril to which Defendant, its agents, servants and/or employees had knowledge.

"(d) That defendant knew that the area in which the said premises were located was dangerous, that other criminal acts including assaults and burglarys *[sic]* had taken place, and defendant failed to provide for plaintiffs *[sic]* safety.

"(e) Failed to provide adequate lighting to light those common pathways."

Plaintiffs further alleged a breach of contract by the defendant by its asserted failure to "provide quiet enjoyment and by not maintaining said premises in the very best condition".

On October 19, 1978, the hospital filed its motion for summary judgment pursuant to GCR 1963, 117.2(1), alleging that the plaintiffs failed to state a claim upon which relief could be granted because there was no legal duty upon the defendant to protect against this kind of assault. On March 2, 1979, the motion was heard and denied without prejudice, in order to allow plaintiff an additional 180 days in which to pursue discovery. No additional discovery ensued.

On September 28, 1979, the hospital renewed its motion for summary judgment. The court again continued the matter for 60 days, conditioned on plaintiffs' efforts to complete discovery. Again, no discovery ensued. On December 21, 1979, the matter was reargued. On January 7, 1980, the trial court granted defendant's motion, stating that "defendant did not owe the plaintiff a duty to protect against the kind of sudden and unforeseeable injury occurring here, and plaintiffs' com-

plaint, therefore, fails to state a claim upon which relief can be granted".

In reviewing the propriety of a motion for summary judgment under GCR 1963, 117.2(1) a court looks to the pleadings only. Such a motion is intended to test the legal basis of a complaint, as opposed to the facts available to support it. *McCallister v Sun Valley Pools, Inc,* 100 Mich App 131, 135; 298 NW2d 687 (1980). Allegations of fact contained in the plaintffs' complaint and fairly drawn inferences or conclusions therefrom are to be taken as true. Unless the claim is so clearly unenforceable as a matter of law that no factual development could establish a basis of recovery, the motion must be denied.

The Michigan Supreme Court has twice considered, under varying fact situations, the propriety of placing a duty of care on landlords to protect their tenants from potential criminal activities. In *Johnston v Harris,* 387 Mich 569, 573-574; 198 NW2d 409 (1972), the Court discussed the liability of the owner of a four-unit apartment building, in which a tenant was attacked and beaten in an unlocked, unlighted vestibule of the building. The building itself was located in a high crime neighborhood. The Court held:

"We are of the opinion that 2 Restatement Torts, 2d, § 442B, p 469, cited by the Court of Appeals, is not applicable to the instant case. Rather, in point are §§ 302B, 448 and 449, *supra.*

"Section 302B provides:

" 'An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.'

"Section 448 provides:

" 'The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.*' (Emphasis supplied.)

"Section 449 provides:

" 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' "

Thus, it was held that a landlord's duty of care would extend to foreseeable criminal activities by third persons within the common areas of a multiple dwelling unit.

The later case of *Samson v Saginaw Professional Building, Inc,* 393 Mich 393; 224 NW2d 843 (1975), imposed a duty of care upon the landlord of a commercial office building. In *Samson,* the Supreme Court upheld a jury verdict in favor of a tenant's employee based on the defendant's negligence in renting the premises to a state mental clinic and not, thereafter, taking appropriate steps to protect its other tenants and patrons from foreseeable criminal actions committed by patient-visitors to that clinic. The Court held that the defendant landlord was under a duty to provide some security measures or warnings for the safety of his tenants and visitors and stated:

"We prefer to recognize and uphold that duty in these types of relationships, leaving it to the jury to

determine the ultimate questions which may impose liability, those of foreseeability, reasonableness and proximate cause." 393 Mich 393, 409.[1]

The Court also saw fit to predicate the defendant's duty of care on 2 Restatement Torts, 2d, § 314A(3), which places upon the possessor of land open to the public a duty to protect the public from "unreasonable risk of physical harm".

In *Graham v Ryerson,* 96 Mich App 480, 488; 292 NW2d 704 (1980), we discussed the general rule regarding the finding of duty:

"Although the question of duty is generally for determination by the trial court as a matter of law, the jury should examine the issue pursuant to proper instructions, when the facts adduced at trial are in dispute, giving rise to a reasonable difference of opinion as to the foreseeability of the particular risk and the reasonableness of defendant's conduct in that regard. *Robertson v Swindell-Dressler Co,* 82 Mich App 382; 267

[1] The *Samson* Court also quoted several additional comments from the Restatement of Torts, pertaining to the duty to protect against criminal activities:

"There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account. The following are examples of such situations. The list is not an exclusive one, and there may be other situations in which the actor is required to take precautions. * * *

"B. Where the actor stands in such a relation to the other that he is under a duty to protect him against such misconduct. Among such relations are those of carrier and passenger, innkeeper and guest, employer and employee, possessor of land and invitee, and bailee and bailor. * * *

"D. Where the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct." 2 Restatement Torts, 2d, § 302B, pp 90-91.

NW2d 131 (1978), *lv den* 403 Mich 812 (1978), relying on Prosser, Torts (4th ed), § 37, p 206 and § 45, p 290."

See also *Farwell v Keaton,* 396 Mich 281, 286-287; 240 NW2d 217 (1976).

We do not find the facts, as alleged by the plaintiffs, subject to dispute. Accepting as true the facts so alleged and fairly drawn inferences and conclusions therefrom, the lower court properly determined the issue of duty as a question of law. Further, while there is substantial disagreement over the imposition of a duty on landlords in cases like the present,[2] we have been unable to find any prior decision which would impose such a duty on a landlord in a situation similar to that of the defendant. Despite the Supreme Court's expressed preference to "recognize and uphold" a landlord's basic duty to protect tenants from potential criminal activities, we do not believe this duty should extend to fact situations like the present. We find this case readily distinguishable from *Berlin v Snyder,* 89 Mich App 38; 279 NW2d 322 (1979), wherein the tenant was assaulted and robbed in a common area inside the apartment building in which he lived. There the plaintiff alleged the cause of his injuries was the landlord's failure to provide and maintain a rear door that closed and locked properly. We found a cognizable theory of negligence in those allegations. We hold that no such cognizable theory of negligence is presented here.

The facts as accepted below disclose a series of crimes which began outside of the plaintiffs' home. There is nothing in the record to suggest that the house was improperly maintained as was the

[2] See the extensive summary of decisions concerning this issue in 43 ALR3d 331.

apartment building in *Johnston v Harris, supra,* or that the home was not equipped with outside lights sufficient for residential purposes. Further, in cases like this we see no landlord duty to provide continuous security personnel as alleged by the plaintiffs. We thus find no error in the lower court's order granting defendant's motion for summary judgment.

Affirmed.