## JOHNSTON *v* HARRIS
### OPINION OF THE COURT

1. NEGLIGENCE—UNREASONABLE RISK OF HARM—CRIMINAL LAW—THIRD PERSONS.

   An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm even though such conduct is criminal.

2. NEGLIGENCE—TORTS—CRIMINAL LAW—THIRD PERSONS.

   The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur 2d, Negligence §§ 41, 63, 206, 207.
Landlord's obligation to protect tenant against criminal activities of third persons, 43 ALR3d 331.
[5] 53 Am Jur, Trial § 99 *et seq.*
[6] 49 Am Jur 2d, Landlord and Tenant § 800 *et seq.*
Landlord's obligation to protect tenant against criminal activities of third persons, 43 ALR3d 331.

3. NEGLIGENCE—TORTS—CRIMINAL LAW—THIRD PERSONS.

An act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby, if the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent.

4. LANDLORD AND TENANT—NEGLIGENCE—PROXIMATE CAUSE.

Actionable negligence may lie in an action by a tenant against his landlord for injuries received by the tenant where, as he reached for the doorknob on the front door of the apartment building in which he was a tenant, the door was jerked open and he was assaulted, struck and robbed by an unknown person who was lurking in the poorly lighted, unlocked vestibule to the building which was in a high crime area and plaintiff asserted that the assault, robbery and consequent injuries were . proximately caused by the failure of the landlord to provide adequate lighting and door locks.

5. TRIAL—DIRECTED VERDICT—PLEADINGS—PROOFS—EVIDENCE.

Trial court had the obligation to view the evidence most favorable to plaintiff merely to determine whether a *prima facie* case had been presented, in view of defendants' failure to rest prior to moving for a judgment; therefore, since the trial court failed to consider the totality of plaintiff's pleadings and proofs in a proper procedural context, plaintiff's presentation of a *prima facie* case on all elements, standing unrebutted, precluded the entry of judgment against him on the record as it stood when defendants moved as they did.

DISSENTING OPINION

T. E. BRENNAN, J.

6. LANDLORD AND TENANT—TORTS—NEGLIGENCE—PROXIMATE CAUSE —PUBLIC SAFETY.

*The rule of tort law is extended too far by a decision that actionable negligence may lie in an action by a tenant against his landlord for injuries received by the tenant where, as he reached for the doorknob on the front door of the apartment building in which he was a tenant, the door was jerked open and he was assaulted, struck and robbed by an unknown person who was lurking in the poorly lighted, unlocked vestibule to the building which was in a high crime area and plaintiff asserted that the assault, robbery and consequent injuries were proximately caused by the failure of the land-*

> *lord to provide adequate lighting and door locks because*
> *public safety is the business of government and, already*
> *overburdened by taxes largely laid to pay for public safety,*
> *owners of such property will be required to maintain ad-*
> *ditional lighting, guards, enclosures, alarms, locks and take*
> *every other precaution to avoid reasonably foreseeable con-*
> *ditions which attract criminals; this would place an addi-*
> *tional burden upon the land and the resources of so-called*
> *"high crime areas."*

Appeal from Court of Appeals, Division 1, Le-
sinski, C. J., and J. H. Gillis and Beasley, JJ.,
affirming Wayne, Thomas Roumell, J. Submitted
March 7, 1972. (No. 5 March Term 1972, Docket
No. 53,293.) Decided June 20, 1972.

30 Mich App 627 reversed.

Complaint by Reese Johnston against Robert G.
Harris and National Bank of Detroit, co-adminis-
trators of the estate of Paul Cornell, deceased, for
damages for personal injuries resulting from de-
ceased's negligence. Judgment for defendants.
Plaintiff appealed to the Court of Appeals. Af-
firmed. Plaintiff appeals. Reversed and remanded
for new trial.

*Charfoos, Charfoos & Gruber,* for plaintiff.

*Garan, Lucow, Miller, Lehman, Seward & Cooper*
(by *Ronald C. Winiemko*), for defendants.

*Amicus Curiae:*
Wayne County Neighborhood Legal Service Cen-
ters, Inc. (by *Craig Colby*).
Michigan Legal Services Assistance Program (by
*Robert L. Reed*).

T. M. KAVANAGH, C. J. Plaintiff was an elderly
tenant in decedent's four-unit apartment building

located in the Detroit inner city. Returning home
at about 7:30 p.m. on October 7, 1965, plaintiff ap-
proached the front door. As he reached for the
doorknob, the door was jerked open and he was
assaulted, struck and robbed by an unknown youth
who was lurking in the poorly lighted, unlocked
vestibule.

Plaintiff commenced action in Wayne Circuit
Court against defendants' decedent, asserting that
the assault, robbery and consequent injuries were
proximately caused by the failure of decedent to
provide adequate lighting and door locks.

Plaintiff offered proof of the dim lighting of the
porch and vestibule and the continuously unlocked
outer door of the vestibule. He showed, through
the testimony of a public lighting expert, the rela-
tionship between poor lighting and the high inci-
dence of night crime. He further showed this to
be a high crime area.

At the conclusion of plaintiff's proofs the trial
court, sitting without a jury, granted defendants'
"motion for a directed verdict of no cause of action,"
stating it was not persuaded "that there was any
degree of fault on the part of the landlord which
could be declared to be the contributing or direct
proximate cause for the injury that befell the plain-
tiff  *  *  *  ."

The Court of Appeals concluded from a review
of the record that as to duty and breach, plaintiff
had established a *prima facie* case. However, it
found no adequate proof of a proximate cause and
therefore affirmed the trial court. 30 Mich App
627. Plaintiff was granted leave to appeal to this
Court. 384 Mich 838.

The controlling issue is: where plaintiff has pre-
sented a *prima facie* case to a judge without a jury
that a landlord had a duty to provide adequate

porch and vestibule lighting and a lock on the front
door of his apartment building, was the landlord's
breach of that duty a proximate cause of plaintiff's
mugging by a criminal who was lurking in the poorly
lighted and unlocked vestibule of the apartment
building?

The Court of Appeals apparently treated the
action as solely based on a theory that decedent's
failure to provide proper locks and lighting had
resulted in plaintiff's injuries. Viewed as such, a
fatal logical void existed as to the element of proxi-
mate cause. However, to so narrowly view plain-
tiff's pleadings and proofs is to wholly ignore the
interwoven assertion that decedent was negligent
in creating a condition conducive to criminal as-
saults.

The crux of plaintiff's case was that in a high
crime district it is reasonably foreseeable that in-
adequate lighting and unlocked doors would create
conditions to which criminals would be attracted
to carry out their nefarious deeds. Thus, on a
theory not unlike that contemplated by sections
302 B, 448 and 449 of 2 Restatement Torts, 2d, pp
88, 480 and 482, plaintiff asserted that decedent's
negligence consisted of enhancing the likelihood of
exposure to criminal assaults by failing to provide
adequate lighting and locks. Plaintiff argued, in
effect, that decedent set a trap.

We are of the opinion that 2 Restatement Torts,
2d, § 442 B, p 469, cited by the Court of Appeals, is
not applicable to the instant case. Rather, in point
are §§ 302 B, 448 and 449, *supra.*

Section 302 B provides:

"An act or an omission may be negligent if the
actor realizes or should realize that it involves an
unreasonable risk of harm to another through the
conduct of the other or a third person which is in-

tended to cause harm, even though such conduct is criminal."

Section 448 provides:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.*" (Emphasis supplied.)

Section 449 provides:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

The underlying significance of this element of foreseeability, recently discussed by us in *Davis* v *Thornton,* 384 Mich 138 (1970), is apparent in the language of section 448 of the Restatement.

We note that a similar theory has been accepted in a number of quite dissimilar factual settings.

In *Wallace* v *Der-Ohanian,* 199 Cal App 2d 141; 18 Cal Rptr 892 (1962), the plaintiff, an 11-year-old girl, recovered damages from a camp operator for a sexual assault committed by an unknown person. It was held that the risk of sex molestation was a foreseeable result of assigning plaintiff to a room in a barracks-like building without providing adult supervision.

In *Yashar* v *Yakovac,* 48 NYS2d 128 (1944), a bar owner was found liable to a patron for injuries sus-

tained by him at the hands of assailants lurking outside the bar. Having ejected the two rowdies who had previously been bothering plaintiff, the bartender then ejected plaintiff, knowing the two rowdies were outside waiting for him.

In *Liberty National Life Ins Co v Weldon,* 267 Ala 171; 100 So 2d 696, 708 (1957), it was held that whether the murder of an insured child by the beneficiary aunt was a reasonably foreseeable consequence of issuance of a policy to one who had no insurable interest was a jury question. The Court observed that:

"[A]n insured is placed in position of extreme danger where a policy of insurance is issued on his life in favor of a beneficiary who has no insurable interest."

The importance of the element of foreseeability is equally reflected in the rejection of liability in *Bellows v Worcester Storage Co,* 297 Mass 188; 7 NE2d 588 (1937), and in *Carini v Roman Catholic Bishop of Springfield,* 219 Mass 117; 106 NE 589 (1914).

Contrary to the statement of the trial court,* we hold that actionable negligence may lie in these circumstances.

In view of the defendants' failure to rest, prior to moving for a judgment, the trial court had the obligation to view the evidence most favorable to plaintiff merely to determine whether a *prima facie* case had been presented. The trial court apparently treated the case as if defendants had rested. Even treated as such, error was committed, for the trial

---

* The trial court's opinion from the bench concludes with:
"Moreover, and in a general way, the court is unaware of any persuasive law in Michigan which would set up at least the fundamentals of liability of a landlord in circumstances of these [*sic*] kind and, therefore, I grant the directed verdict of no cause for action."

court failed to make the requisite specific findings of fact and law pursuant to GCR 1963, 517.

Therefore, since the trial court failed to consider the totality of plaintiff's pleadings and proofs in a proper procedural context, plaintiff's presentation of a *prima facie* case on all elements, standing unrebutted, precluded the entry of judgment against him on the record as it stood when defendants moved as they did.

The only other question to be decided is whether plaintiff preserved his right to a trial by jury. This record does not support such a finding.

Reversed and remanded for new trial.

Black, Adams, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.

T. E. Brennan, J. (*dissenting*). I disagree. I believe the majority extends the rule of tort law too far.

Public safety is the business of government.

Today's decision concedes the failure of government to make the streets and homes of certain areas reasonably safe and, in effect, transfers the governmental function of public protection to the unfortunate owners of real property in such places.

Already overburdened by taxes largely laid to pay for public safety, these owners will now be required to maintain additional lighting, guards, enclosures, alarms, locks and take every other precaution to avoid reasonably foreseeable conditions which attract criminals to carry out their nefarious deeds.

At a time when concerned citizens and public officials are seeking ways to involve the broader community in resolving the plight of so-called "high

crime areas", our Court would place an additional burden upon the land and the resources of such areas.

The intrusion of private industry into the business of public safety has been one of the most unfortunate phenomena of the 1960's and the 1970's. Already, there are subdivisions which operate their own patrol cars; private police and private guards are multiplying; vigilante forces of private citizens roam the streets with walkie-talkies; store owners and apartment managers arm themselves and set traps for burglars; and now this Court would give further impetus to such developments by imposing civil liability on the unfortunate victims of crime in "high crime areas".

No member of this Court lives in such an area. None are voting to increase his own insurance premium, or that of his neighbors. What we do in the name of liberality is regressive. It is a mistake.