Rose SPAR and Lustine Realty Company, Inc., Appellants,

v.

Emmanuel S. O. OBWOYA, Appellee.

Emmanuel S. O. OBWOYA, Appellant,

v.

Rose SPAR and Lustine Realty Company, Inc., Appellees.

Nos. 10024 and 10081.

District of Columbia Court of Appeals.

Argued June 23, 1976.

Decided Feb. 1, 1977.

———◆———

Jack H. Olender, Washington, D. C., for appellant in No. 10081 and appellee in No. 10024.

Reid C. Tait, Washington, D. C., with whom James C. Gregg and David M. Moore, Washington, D. C., were on the brief, for appellants in No. 10024 and appellees in No. 10081.

Before FICKLING, KERN and MACK, Associate Judges.

KERN, Associate Judge:

On the afternoon of August 11, 1971, Emmanuel Obwoya, a national of Uganda, and a student at a local university, entered the 22-unit apartment building on 13th Street in which he lived with another student. As he walked up the stairs in the common hallway, after checking his mailbox in the vestibule, he heard the front entrance door of the building close. Immediately thereafter he saw a stranger who greeted him with a "Hi". This unidentified man then robbed him at gun-point and proceeded to shoot him in the back (a bul-

let is permanently lodged in his spine) and flee through the apartment's front entrance which consists of a pair of wood frame doors, each containing a glass inset.

Ultimately, Obwoya brought suit against the apartment building's owner, Spar, and manager, Lustine Realty Company. The judge directed a verdict against Obwoya on his claim for punitive damages, but refused to direct a verdict on his claim for compensatory damages and the jury rendered a verdict in favor of plaintiff in the amount of $75,000. The parties have taken cross-appeals which we now consider.[1]

The evidence viewed in the light most favorable to Obwoya was that the lock on the front entrance door was broken on the day in question and had been broken for at least a week before; the lock was "cheap" and *not* of a "commercial" or "heavy duty" type and was continually being broken and "easily" slipped with a plastic card; and, during negotiations between the tenants and the landlord concerning a proposed rent increase in late 1969, the tenants had expressed dissatisfaction with the front-door security and proposed that steel frames and unbreakable glass be added to the wooden doors.

There was testimony by several tenants that their apartments had been burglarized by means of a forced entry through their individual front doors *from* the building's *common hallway;* another tenant testified that she had been robbed in the apartment's stairwell at knifepoint; and, other tenants testified as to the presence of strangers in the building's hallways. There was statistical evidence that the seven-block area in which the apartment building was located ranked in the top ten percent of the District of Columbia in the incidence of crime. Finally, three "newer and bigger" apartment buildings in the

1. Suit was originally filed in the United States District Court, where another codefendant company which also apparently managed the building was granted summary judgment. The case was subsequently certified to the Superior Court of the District of Columbia.

same block had steel-frame doors and reinforced glass panels that could not be "slipped" by use of a plastic card.

The trial court's instructions to the jury first defined negligence and proximate cause and then stated (Record at 892), "[T]he landlord and property management can . . . be responsible for Mr. Obwoya's injury, if you find that their negligence made it possible for the criminal to injure Mr. Obwoya at the time and place where the shooting occurred, and that their negligence was the proximate cause of the injury."

The court further charged (Record at 892–93), "[I]n deciding whether there was any negligence in this case the conduct of a party must be considered in the light of all the surrounding circumstances. . . . An act that is negligent under one set of circumstances may not be so under another. . . . [W]e ask what conduct might reasonably have been expected of a person of ordinary prudence under the same circumstances? Our answer to that question gives us a criterion by which to determine whether or not the evidence before us proves negligence. . . . The amount of caution required by the law increases with the danger that reasonably should be apprehended."

The trial judge instructed the jury on the burden of proof carried by Mr. Obwoya, the theory of contributory negligence and the meaning of "assumption of risk." He further charged the jury (Record at 895):

*The landlord who rents different parts of a building to various tenants and retains control of the stairways, passageways, hallways . . . of the building for common use of the tenants, has resting upon him a duty to use reasonable care to keep such places in a reasonably safe condition. . . .* [Emphasis added.]

The court also charged the jury (Record at 896–97):

The plaintiff can recover from the defendant landlord and the defendant property manager only if you find that these defendants breached the duty which they owed to the plaintiff. There is a duty of reasonable protection against criminal acts of third parties owed by the landlord to the tenant and his guests in an urban multiple unit apartment dwelling. This standard of care which should be applied in judging if the landlord has fulfilled his duty of protection to the tenant and his guests is reasonable care under all the circumstances. In judging whether these defendants fulfilled their duty of exercising reasonable care under all the circumstances, you should consider the standard of protection commonly provided in apartment buildings of the same character and class of 2535 Thirteenth Street, Northwest, at the time of the assault upon the plaintiff; namely, August 11, 1971.

Finally, the court instructed the jury (Record at 897–98):

[T]he plaintiff can recover from defendants if, but only if, you find by a preponderance of the evidence that defendants breached their duty to plaintiff by failing to exercise reasonable care under all the circumstances.

■ Spar and Lustine Realty state at the outset of their argument (Brief at 6) that this case "presents this Court its first opportunity to critically review, analyze and apply the case of *Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 141 U.S.App.D.C. 370, 439 F.2d 477 (1970)" and subsequently argue (Brief at 7) "[t]he mere relationship of landlord and tenant does not impose upon the landlord a duty to act so as to protect his tenants . . . from the criminal acts of third parties." But we do not understand the instant case to rest upon such a broadly-stated proposi-

tion as appellants Spar and Lustine Realty assert.[2] In the first place, appellants themselves recognize that (Brief at 6) the facts here are "in sharp contrast" to those in *Kline*. Secondly, the trial court in the instant case, consistent with *Ramsay v. Morrissette*, D.C.App., 252 A.2d 509 (1969), correctly stated to the jury that the landlord has the duty to use reasonable care in maintaining for common use of all tenants the hallways and other portions of his apartment building over which he retains control. In this case, given the evidence of criminal incidents occurring in or emanating from the apartment's hallways, the continuing inadequacy of the front doorway of the apartment to keep out unauthorized persons from the building, the action taken by other apartment buildings in the same block to improve the security of their front doorways, and the notice of tenants' concern over the security problem created by the inadequacies of the front door which was afforded the landlord, we cannot say the trial court erred in its instructions or in permitting the case to go to the jury.

■ Appellants complain that since there was evidence of only one assaultive crime occurring in their building's hallway prior to the robbery and shooting of Obwoya they were not on notice of similar crimes occurring within the common hallway so as to create a likelihood that future crimes would occur. However, there was evidence of (a) individual apartment units of the building being burglarized by forcible entry from the common hallway, and (b) the presence of unauthorized persons in the building. This evidence, taken as a whole, is sufficiently related to the robbery of the plaintiff to have put appellants on notice of the likelihood of unauthorized entry into the building by persons with criminal intent. As the federal circuit court

here said in *Kendall v. Gore,* 98 U.S.App. D.C. 378, 387, 236 F.2d 673, 682 (1956) (footnote omitted) : "A defendant need not have foreseen the precise injury, nor 'should [he] have had notice of the particular method' in which a harm would occur, if the possibility of harm was clear to the ordinary prudent eye."

■ Appellants also contend that whatever complaints the tenants had expressed to them in 1969 concerning the inadequacy of the security provided by the building's front door were finally resolved by a Stipulation entered into between the parties concerning the rent dispute. Since the Stipulation did not refer to front door security, appellants argue, the tenants thereby were inferentially satisfied with the present situation. Accordingly, appellants contend they were not on notice of any security deficiencies extant when the robbery and shooting occurred subsequently in this case. Given the evidence of the continuing disrepair and/or vulnerability of the front-door lock to being "slipped" and the general proposition that a negotiated settlement of a dispute connotes a *compromise* on the part of both sides, we are unwilling to conclude as a matter of law that the omission altogether from the Stipulation of the subject of front-door security is to be taken as the end of the security problem and the lulling of appellants into a belief that no such problem existed. In our view, it was for the trier of fact to determine whether appellants *under all the circumstances* were on notice of the likelihood of a criminal assault on a tenant in the common hallway by unauthorized persons in the building's common passageways.

■ Appellants next argue that even if their duty was to exercise reasonable care under the circumstances, the action taken by other apartment buildings on the block

2. We will henceforth refer to Spar and Lustine Realty as appellants since they were unsuccessful in avoiding liability in the trial, although the tenant, Obwoya, is denominated

in the caption of this case as appellant since he is seeking on appeal relief from the trial court's refusal to permit the jury to consider the issue of possible punitive damages.

was irrelevant and improperly considered by the jury since these apartments were newer and bigger than their own apartment. We are of opinion that these buildings were by reason of their location (same block) and nature (multiple-unit) sufficiently similar in character and class to appellants' building to warrant consideration by the jury. The fact that they were newer and bigger was presented to the jury and went properly to the weight of such evidence in determining whether defendants had acted reasonably.

▮▮▮▮ Appellants urge that there was insufficient evidence to permit the jury to conclude that the lock was either inoperative at the time of the assault or that the assailant was enabled to obtain entry because of the faulty lock in order to commit his assault. In short, they argue the evidence of causality was lacking. There was conflicting testimony on the condition of the lock and it was for the trier of fact to resolve that conflict. Since appellee testified that he saw no one else in the vestibule when he entered, and there was evidence that that area was so small that he would have seen anyone actually there and that he had heard the front door close as he walked up the stairs, there was enough evidence for the jury to conclude that the assailant did indeed enter by the unsecured front door.[3] We reject appellants' further argument that in order to find their negligent failure to maintain the lock on the front doors was the proximate cause of Obwoya's injury, the jury must have found

first that an adequately-secured door would have in all events deterred the assailant. There is no doubt that some criminals will not be turned aside from their mission no matter what obstacles are placed in their path but to accept appellants' proposition would be tantamount to accepting the proposition that an intervening criminal act *always* excuses others from liability regardless of how they might have furthered the criminal act. It is sufficient to note that the holding in *Ramsay v. Morrissette, supra*, would not have obtained had appellants' proposed standard for proximate cause prevailed. Proximate cause is rather a test of whether the injury is the natural and probable consequence of the negligent or wrongful act and ought to be foreseen in light of the circumstances. *Wagshal v. District of Columbia*, D.C.App., 216 A.2d 172 (1966). We think that the Restatement (Second) of Torts, § 448 (1965) provides the best test for the facts before us.

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* [Emphasis added.] [4]

3. Appellants' reliance on our holding in *Blumenthal v. Cairo Hotel Corp.*, D.C.App., 256 A.2d 400 (1969), is misplaced. There, we affirmed a summary judgment for the landlord in a personal injury action by a tenant who was assaulted in her hotel room by an unknown person who entered through the window. The gravamen of the complaint was that the landlord's negligence consisted in replacing a broken lock on a sash window with a side lock that was capable of locking *only* the lower half of the sash, and that since this window opened onto a fire escape, the landlord created the opportunity for the assailant to break into the room. However,

the tenant did *not* testify that the side lock was broken, but only that it was hard to work; and she could *not* remember if she had secured the lock on the night of the break in. Here, appellee testified the door lock *was* broken, he heard the door close *again* after he had entered through it and he saw no one else in the hallway *before* the unknown assailant confronted him.

4. In elaborating on this section, Comment b states in part:

    There are certain situations which . . . create temptations to which no considerable percentage of ordinary mankind is

The evidence supports the theory that the negligence of appellants here was not their failure to install the type of front door that would have repulsed *every conceivable* criminal attack, but their failure to do anything to improve upon a front door lock which was easily rendered inoperative, as viewed against their knowledge, actual or constructive, of these circumstances.

■ In sum, then, we conclude that the jury possessed adequate information upon which to find proximate cause, and therefore their verdict on the issue of liability must stand.[5]

■ We turn now to the issue of damages. Obwoya was awarded $75,000 in compensatory damages and appellants first contend that there is no basis in the record to support his claim of loss of future earnings. He testified that he was unable to perform work requiring physical exertion, such as light cleaning and dishwashing, due to the permanent presence of the bullet lodged in his spine and the pain engendered. He was able to perform more sedentary duties, such as those of a night watchman who was not required to walk around the premises. In the four years between the injury and the trial, appellee had made a total of ten visits to physicians complaining of pain in the area of the injury, and its scar. One of the physicians he visited testified that the pain would probably persist so long as the bullet remained lodged in his spine, and that it would not be sound medical practice to remove the bullet. Since he was at the time of the assault *and* of trial an economics student at Howard University, appellants argue that his earning capacity in his chosen profession will not be affected by his injury and thus the court's instruction on loss of future earnings permitted the jury to speculate on that element of damages. We disagree. We are unwilling to state that the practice of economics is a "sedentary" profession, or that ten visits to doctors over a period of four years seeking relief from pain are not material to the ability to devote *full* attention to professional duties in the future without the distraction of pain from the bullet in his body.

likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime. *If the situation which the actor should realize that his negligent conduct might create is of [this sort], an intentionally criminal . . . act of the third person is not a superseding cause which relieves the actor from liability.* [Emphasis added.]
Comment c to this section states in relevant part:
    *The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression.* If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability. . . . [Emphasis added.]

5. While we have declined as unnecessary to the decision of this case appellants' invitation to undertake a review of the federal circuit court's decision in *Kline,* we do note the following. That decision was rendered in 1970 and hence binding on this court in accordance with our rule in *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971), absent review by this court sitting en banc. Moreover, the circuit court at the outset of its opinion *Kline v. 1500 Mass. Apt. Corp., supra,* 141 U.S.App.D.C. at 371, 439 F.2d at 478, stated the issue to be " 'whether a duty should be placed on a landlord to take steps to protect tenants from foreseeable criminal acts committed by third parties' " and concluded that there should be. Finally, the circuit court concluded (at 375, 439 F.2d at 482) :
    In the case at bar *we place the duty of taking protective measures guarding the entire premises* and the areas peculiarly under the landlord's control against the perpetration of criminal acts upon the landlord . . . . [Emphasis added.]
*See Scott v. Watson,* 278 Md. 160, 165, 359 A.2d 548, 553 (1976), in which the Maryland Court of Appeals viewed the holding of *Kline* to be that a landlord has "a specific duty in tort to protect the tenant from crimes committed by third parties upon the premises . . . ."

Appellants next contend that the evidence introduced at trial as to Obwoya's life expectancy was speculative. That evidence consisted of information from the United States Department of Health, Education and Welfare (HEW) tables for non-white individuals residing in the United States. Since appellee is a Ugandan national, appellants argue, the tables do not apply to him. However, an official from HEW testified at trial that his department did not compile nor did he know of any life expectancy figures for nationals of Uganda. Further, the court instructed the jury that the HEW data was not "by law controlling, but should be considered in connection with all other evidence bearing on the same issue, such as that pertaining to the health, habits and activity of the person whose life expectancy is in question." (Record at 902.) Under these circumstances, we view the particular evidence of life expectancy as properly admitted and adequately explained to enable the jury to reach a valid decision.[6]

The jury's verdict as to damages should be set aside only when it indicates prejudice, passion, or partiality, or when it must have been based on oversight, mistake, or consideration of an improper element. *Lester v. Dunn,* 154 U.S.App.D.

C. 399, 475 F.2d 983 (1973). Nor should a party who has proved his injury and its proximate cause be deprived of compensatory damages merely because they cannot be computed with exactitude. *See e. g., Burka v. Crestview Corp.,* D.C.App., 321 A.2d 853 (1974). We see no reason under these standards to overturn the jury's verdict on damages.

We turn now to Obwoya's contention that the trial court erred in directing a verdict for defendants on the issue of punitive damages. We find no error. Punitive, or exemplary, damages are to be awarded for "willful and outrageous conduct," *Harris v. Wagshal,* D.C.App., 343 A.2d 283, 288 (1975); *Franklin Investment Co. v. Homburg,* D.C.App., 252 A.2d 95, 98 (1969), or for "wantonness, oppressiveness, maliciousness, recklessness, gross fraud, gross negligence, a spirit of mischief, or criminal indifference to civil obligation." *Washington Garage Co. v. Klare,* D.C. App., 248 A.2d 681, 684 (1968). We agree with the trial court that the record contains insufficient evidence of such misconduct so as to warrant punitive damages. The directed verdict on this issue was proper.

*Affirmed.*

---

6. Both contentions as to damages raised here by appellants were argued by counsel to the jury. Instructions were given on several other elements of damages, including pain, suffering, embarrassment, medical expenses incurred, and income actually lost, and it would be sheer speculation on our part to determine what part, if any, of the ultimate award by the jury was to compensate for each element of damages suffered.