Gloria GRAHAM et al., Appellants,

v.

M & J CORPORATION et al., Appellees.

No. 14093.

District of Columbia Court of Appeals.

Argued Dec. 13, 1979.

Decided Nov. 24, 1980.

William I. Martin, Washington, D. C., for appellants.

Donald P. Maiberger, Washington, D. C., for appellees.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

Appellants, the tenants and guests residing in a two-family building in a high crime area of the city, sued the landlord for injuries resulting from a fire deliberately set in the foyer of the building by the former paramour of one tenant. Appellants alleged that the landlord was negligent in blocking alternate exits and failing to provide a lock on the outer door of the foyer, despite his knowledge of previous criminal acts occurring in the common area of the building under his exclusive control. The trial judge granted the landlord-appellee's motion for summary judgment, stating that, as a matter of law, (1) the landlord had no duty to foresee that a tenant's rejected lover would commit criminal arson and (2) any violations of housing regulations were not the proximate cause of the injury. We reverse the grant of summary judgment because the existence of the landlord's duty and causation are questions of fact for the jury.

In August, 1975, the two story building at 507 O Street, N.W., was cited by the Department of Economic Development for numerous continuing violations of the housing regulations, including an outer door which did not fit reasonably well within its frame and defective or missing hardware on the door. In the same month, Gloria Graham and family moved into the downstairs apartment and Priscilla Harris and family moved into the upstairs apartment.

Although there was no lock on the outer door, each apartment did have a lock on the inner door leading directly into the individual premises. The tenants frequently complained to the landlord about the absence of an outer door lock. They explained to the rental agent that intruders and strangers entered the foyer through the open door and committed acts of vandalism, such as removing the lights or fuses. Both tenants were aware of the neighborhood's reputa-

tion as a high crime area, and Ms. Graham told the rental agent of an attempted burglary through her window.

A week before the fire, Ms. Graham told the rental agent that she had lost the key to her back door, and asked for a replacement, but none was provided. Ms. Harris had no rear exit because a rear stairway leading to her back door had been boarded up before her tenancy began.

The day before the fire, on Friday, June 5, 1976, Ms. Harris quarrelled with Tony Totten, her boyfriend of six years, and evicted him from her apartment, where he had been living. The police were called to supervise the eviction of Totten and his possessions. In deposition, Ms. Harris stated that the only people who had keys to her apartment were her son, niece and herself; she did not state that Totten had a key, but mentioned that he had entered her apartment on a former occasion by manipulating the lock with a screwdriver or case knife.

On the night of Saturday, June 6, Totten returned to 507 O Street and poured and ignited an inflammatory liquid in the foyer. One boy was killed in the ensuing fire, several other people received serious burns, and others were injured by jumping from the windows. Totten subsequently pleaded guilty to second-degree murder.

Those injured in the fire brought a personal injury action against the landlord. They charged him with negligence in failing to provide an outer door lock and a replacement key for Ms. Graham's back door, and in boarding up the rear stairway. The trial court granted summary judgment in favor of the landlord, stating in a Memorandum and Order that the landlord had no duty to foresee that a regular guest of a tenant might commit arson unless front door locks were provided. Moreover, concluded the court, the blocked staircase or missing back door key could not be said to be the proximate cause of the injuries. In granting the summary judgment motion, the trial judge also commented that the absence of an outer door lock was not the proximate cause of the injuries, because a former guest would have been able to gain access no matter how many locks were in place.

■ It is established in the District of Columbia that a landlord has a duty to use reasonable care to keep safe those common areas of the building retained under his control. *Walker v. Dante*, 61 U.S.App.D.C. 175, 58 F.2d 1076 (1932). *See also, Levine v. Katz*, 132 U.S.App.D.C. 173, 174, 407 F.2d 303, 304 (1968) (physical defect leading to plaintiff's injury). This duty has been extended to encompass situations where third party criminal acts injure tenants on the premises, when the criminal activity should have been foreseen by the landlord. *E. g., Ramsay v. Morrissette*, D.C.App., 252 A.2d 509 (1969) (issue for jury whether decreased security measures make landlord liable for assault in apartment); *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 141 U.S. App.D.C. 370, 439 F.2d 477 (1970) (assault in hallway of large building where security measures in effect at beginning of lease had been discontinued; liability based on lease as contract). On facts similar to these, in *Spar v. Obwoya*, D.C.App., 369 A.2d 173 (1977), we held that evidence was sufficient to uphold a negligence verdict against a landlord when a tenant was assaulted in his apartment hallway after an outer door lock had been broken for a week and tenants had complained about the front door security.

■ Foreseeability is the key element in establishing the landlord's duty. Whether the landlord could foresee the criminal activity which caused the injuries here is a question of fact. The *Kline* court defined "foreseeable" as *"probable* and *predictable"* 141 U.S.App.D.C. at 376, 439 F.2d at 483 (emphasis in original). Appellees contend that the minor acts of trespass and vandalism in the foyer of which appellants complained to the rental agent are so different in scope from arson which caused the injuries that the prior events did not constitute notice. We think that a jury might conclude otherwise. Both parties admit that the neighborhood was high in criminal activity. It was alleged that the outer door did not close properly, facilitating entry to

nontenants. Ms. Graham alleged she had informed the rental agent about a previous attempt at robbery through her window. These circumstances create a triable issue of fact as to whether the danger of a criminal assault by means of arson was sufficiently probable and predictable to create a duty in the landlord to take reasonable precautionary measures. In *Spar v. Obwoya, supra* at 177, the landlord was said to be put on notice by previous burglaries and the presence of unauthorized persons in the building.

Appellees also argue that the landlord's duty extends only to keep out *unknown* intruders, not guests of tenants. Similarly, the trial court stressed the fact that the arsonist had been allowed to live on the premises until the day before the fire, so that it was unreasonable to impose a duty on the landlord to keep him from injuring the tenants. If the arsonist had been another tenant, or had he been unquestionably a guest who possessed a key, then perhaps, as a matter of law, no duty could be imposed on the landlord to keep him from assaulting the tenants. *See Trice v. Chicago Housing Authority*, 14 Ill.App.3d 97, 100, 302 N.E.2d 207, 209 (1973) (no duty to insure tenants' safety from another tenant's act of throwing TV over stair railing). Here, however, facts have been alleged which make the criminal's rightful access to the building an issue of fact for the jury. Ms. Harris stated in her deposition that Totten was ejected from the building under police supervision and that he had never had a key. The jury could conclude that he was no longer a guest, and that the tenants had as much legitimate expectation to keep him off the premises as they would any other intruder.

■ For negligence to exist, the landlord not only must have foreseen the danger, but also he must have failed to take security measures reasonable under the circumstances. *Spar v. Obwoya, supra* at 177; *Kline v. 1500 Massachusetts Avenue Apartment Corp., supra* 141 U.S.App.D.C. at 378–79, 439 F.2d at 485–86. No District of Columbia court has ever imposed on land-

lords "a general legal duty . . . to provide full time resident managers or to install locks on the front door of an apartment house." *Ramsay v. Morrissette, supra* at 512–13. What measures are reasonable under the circumstances is determined by a jury assessment of protective measures taken in buildings of similar character and class. *Spar v. Obwoya, supra* at 177–78; *Kline v. 1500 Massachusetts Avenue Apartment Corp., supra* 141 U.S.App.D.C. at 379, 439 F.2d at 486.

Each of the three cases in the District of Columbia discussing the landlord's duty involved a crime in an apartment building. The *Kline* court specifically singled out the landlord of an "urban multiple unit apartment dwelling" *id.* at 376, 439 F.2d at 483, as owing the duty of protection. The building here was not a "multiple unit apartment," so the duty owed may be less. For one thing, the tenants of a duplex might be able to exercise more control over their own safety. The controlling reason for imposing a tort duty in *Kline* was that the apartment tenant would find it impossible to provide the security in common areas. *See* Note, *Landlord's Duty to Protect Tenants from Criminal Acts of Third Parties: The View from 1500 Massachusetts Avenue*, 59 Geo. L.J. 1153, 1187 (1971) (degree of protection expected of landlord should increase with size of building because tenants' control over common areas decreases). It could also be found that the apartment dweller is in greater need of protection. *See* Comment, *Landlord-Tenant Law: Landlord Held Negligent for Criminal Assault by Third Party Intruder on Tenant*, 55 Minn.L. Rev. 1097, 1109 & n.72 (1971) (most New York City robberies occur in common areas of apartment houses). The jury must consider what type of security measures are commonly employed in duplexes in similar areas of the city where low rents are charged.

■ Whether the landlord has a duty to provide rear exits must also be determined according to what is reasonable under all the circumstances. The District of Columbia Housing Code and Housing Regulations

do not require a second stairway in a two story, two unit building. D.C. Building Code 1972, 5A–1 DCRR § 616.2.

■ If negligence is found, it must then be decided if the injuries were proximately caused by the landlord's failure to provide a front door lock or rear exits. The issue of proximate causation is one of fact. *Ramsay v. Morrissette, supra* at 512 (both duty and causation are issues for jury); *Kline v. 1500 Massachusetts Avenue Apartment Corp., supra* 141 U.S.App.D.C. at 382, 439 F.2d at 489 (MacKinnon, J., dissenting) (case should have been remanded for determination whether absence of lock was, in fact, the cause of the assault, or whether assailant was a tenant or guest rather than intruder).[1] Of course, it is possible that the arsonist would have found a way to burn the premises and assault his victims without entering the foyer. This possibility, however, cannot be presumed as a matter of law. As we said in *Spar v. Obwoya, supra* at 178, the jury does not need to find "that an adequately secured door would have in all events deterred the assailant." The jury might find that Totten would have had a key to the outer door lock even if such a lock had been in place. But this determination is best made by the jury which can assess, for example, the credibility of Ms. Harris' denial that Totten had any key to the inner door.

■ Totten's intervening criminal act will not necessarily excuse the landlord from liability. In *Spar v. Obwoya, supra,* we accepted the Restatement of Torts § 448 test for causation where a landlord's failure to provide a lock arguably permitted an intruder to enter the premises and assault tenant:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afford-
> ed an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* [Restatement (Second) of Torts § 448 (1965) (emphasis supplied).]

*See also, Johnston v. Harris,* 387 Mich. 569, 572, 198 N.W.2d 409, 410 (1972) (when a tenant was assaulted by assailants hiding in his unlocked vestibule, proximate causation can be found under Restatement of Torts § 448 because "in a high crime district it is reasonably foreseeable that inadequate lighting and unlocked doors would create conditions to which criminals would be attracted . . . .").

■ The *foreseeability* of the criminal activity is a decisive factor in determining causation, as it is in determining duty. Prosser says that the issue of causation is subsumed in the issue of duty. Where criminal acts operate on a background created by defendant, the real issue is whether the defendant should be *responsible* for the intervening criminal acts. "It is only where such misconduct was to be anticipated, and the risk of it was unreasonable, that liability will be imposed for such intervening acts." W. Prosser, Law of Torts § 44, at 283 (4th ed. 1971).

■ Thus, the question of proximate causation depends on whether the crime was foreseeable. As we have said already in our discussion of duty, that determination is one for the trier of fact. Where reasonable men might differ over the question of whether an intervening force is a reasonable, foreseeable consequence of defendant's conduct, the issue of probable cause should not be determined as a matter of law. *See, e. g., Wright v. General Motors Corp.,* 479 F.2d 52, 53 (7th Cir. 1973)

---

1. The *Kline* case was reversed in favor of the tenant and remanded for a determination of damages only. The majority held that the landlord owed a duty of protection under tort law and contract law. Viewing the lease as a contract, the duty was measured by the security precautions in effect at the beginning of the lease. [Judge MacKinnon, dissenting, argued that insufficient facts were proved at trial to say that landlord had breached any duty owed.]

(question for jury whether defects in truck which caused it to stop were proximate cause of truck driver's injury, or whether wrongful conduct of oncoming vehicle which struck truck driver was intervening force which could relieve manufacturer of liability). *Spain v. McNeal*, D.C.App., 337 A.2d 507 (1975); *Wagshal v. District of Columbia*, D.C.App., 216 A.2d 172, 175 (1966) (issue of fact whether District should have foreseen injury to one motorist from another when stop sign was not maintained).

In conclusion, we hold that the trial court erred in granting appellees' motion for summary judgment. The landlord could have been negligent in failing to foresee that a crime in the foyer would injure appellants, and in failing to take reasonable security precautions like those taken in housing of similar character and class. It is a question of fact for the jury whether negligence existed and whether such negligence proximately caused the tenants' injuries. Consequently, we reverse so that these issues may be resolved at trial.

*So ordered.*

NEBEKER, Associate Judge, dissenting:

The majority's decision intrudes upon the authority of the trial judge to make decisions of law. Restatement (Second) of Torts § 328B(b) (1965). The exceptional case in negligence law of assigning liability for the criminal acts of third persons should not be permitted to alter the traditional view that assignment of duty is first a question of law. Harper & James, The Law of Torts § 18.8 at 1058 (1956). This warning is particularly strong where negligence law is expanding in response to changing social conditions. *See* W. Prosser, The Law of Torts § 53 at 326–27 (4th ed. 1971). Whether the law should safeguard these appellants from the alleged omissions of the landlord requires consideration of several factors better left to the discretion and judgment of the court than to an often bewildered jury. *See, e. g., Clarke v. O'Connor*, 140 U.S.App.D.C. 300, 435 F.2d 104 (1970) (the court examined the "land-

lord no repair" rule and held that it no longer has vitality in the modern urban context). In examining the relevant factors, this court ought to provide clear guidance for the trial courts by either affirming the judgment or more specifically articulating the duty owed. I would affirm.

A recitation of the facts in this case mocks the possibility that the landlord may be assigned a duty to protect the tenants from the injuries they received from the fire. Although there was evidence that the apartment is located in a high crime area of the city, there was no evidence of reported crimes occurring in or around the apartment dwelling. Tony Totten, the arsonist, was a friend of the appellant Priscilla Harris for six years and had been living with her in the apartment on the second floor. There is no evidence that the landlord was aware of this relationship. Tony Totten was not named on the lease. During the days before the fire, Totten and Harris carried on a protracted lovers' quarrel which was often violent and which presumably ended when Harris obtained the aid of the police to evict Totten the day before the fire. There is no evidence that the landlord had knowledge of this breach of their relationship, and there is certainly no reason to believe that the landlord knew anything of Totten's personal character. On the night of the fire, Harris, having spoken with Totten by phone that day and fearing his return, instructed a companion who was with her that night, Charlie Boomer, to help her look out for Totten's car. Later, while Boomer slept in the bedroom, Harris was also wary of "sounds" in the night and in the apartment below. Totten, after having done some drinking, poured a flammable liquid in the first floor hallway and torched the building.

Appellants' theory in this case is similar to that of the appellant in *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 141 U.S.App.D.C. 370, 439 F.2d 477 (1970). In that decision, the Circuit Court of Appeals imposed on landlords the duty to protect tenants from the predictable assaults of third parties in the common areas of

multi-unit apartment buildings. The court ruled that traditional arguments against imposing this duty had lost their vitality in light of "pertinent factors" bearing on the landlord-tenant relationship in modern, urban life. *Kline, supra* at 481. Among these pertinent factors were the superior ability of the landlord to protect against such harm, the appropriateness of imposing such a duty on the landlord based on his knowledge of similar crimes in the common areas, the relation of the parties, the size of the building, and the ability of the parties to shoulder the burden of protection. Although "foreseeability" [1] of the criminal assault was the major factor in the analysis, it was not the only factor.

Permitting the transfer of such a complex decision to a jury would set the law on the wings of chance. Landlords would face unpredictable, potential liability. Furthermore, the court warned that notice to the landlord was a key element because "[i]t would be folly to impose liability for mere possibilities." *Kline, supra* at 483. The determination of adequate notice, with its attendant concerns for other policy factors, must be left to the court.

Similar decisions of this court have also emphasized that the landlord's awareness of criminal activities puts him on notice to protect his tenants. *Spar v. Obwoya*, D.C. App., 369 A.2d 173 (1977); *Ramsay v. Morrissette*, D.C.App., 252 A.2d 509 (1969). In *Ramsay* we said that the landlord's duty arose and the case should go to the jury "where it can be shown that the landlord was aware of a dangerous situation and took no action." *Ramsay, supra* at 512. In *Spar* we held that evidence of burglaries from the common hallways and of the presence of trespassers there was sufficient to put the landlord on notice of the likelihood of entry by potential criminals. *Spar, supra* at 177. Neither case compels the action which the majority takes today in this case. The procedural distinction here has a substantive, legal effect. *Ramsay*, like this case, was a review of summary judgment entered by the trial court. But the authority of that case for the procedural action which this court takes here is ambiguous because one of the errors cited in *Ramsay* was that the trial court granted summary judgment before ruling on a motion to compel the tenant to answer at deposition. *Spar, supra* at 177. The case does not stand for the proposition that foreseeability of criminal conduct is a jury question.

Similarly, *Spar* is not an appropriate guide because this court merely confirmed that the trial judge was correct in giving the case to the jury. The only discussion of foreseeability in that case goes to appellant's contention that the failure to maintain the front door lock was not the proximate cause of the injuries. In that context, this court adopted the Restatement (Second) of Torts § 448 (1965). *Spar, supra* at 178. It is difficult for me to see how these two cases and their respective procedural dispositions require a jury consideration of foreseeability in order to determine the extent of the landlord's duty. *See* discussion of proximate cause, *infra,* 112–113.

Of greater concern to me is the degree with which the facts of this case differ from those of *Spar* and *Ramsay*. This is simply not the same case. To hold a landlord liable for the injuries caused by an arsonist who lived with a tenant and was driven from the premises by her goes too far. Recitation of the dictum of *Kendall v. Gore*, 98 U.S.App.D.C. 378, 387, 236 F.2d 673, 682 (1956), that the landlord "need not have foreseen the precise injury, nor . . . had notice of the particular method . . . if the possibility of harm was clear to the ordinary prudent eye" does not convert a question of duty into a question of fact for the jury. This prescription does not bring the crime of arson within the rule of these prior "like" cases which have decided that the landlord must have had notice of prior "like" crimes before imposing liability.

Rather, the facts of this case raise serious questions about whether liability for malicious arson would be objectionable as a

---

1. The court in *Kline* uses the language "actual and constructive notice."

matter of public policy. Courts of other jurisdictions have been unwilling (wisely, I submit) to pass this responsibility to the jury under the label, "issue of fact." The Supreme Court of New Jersey in *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A.2d 291, 293 (1962), pointed out that in the function of assigning a duty, "[t]he inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." This sort of analysis would be precluded under the majority's approach. This court, in principal, agrees with the highest court of New Jersey. In *Ellis v. Safeway Stores*, D.C.App., 410 A.2d 1381, 1382 (1979), this court affirmed the trial judge's grant of summary judgment for the store owner where the appellant claimed that the store breached a duty when it failed to prevent a depraved customer from assaulting her with an ice pick. In discussing whether a duty existed, we noted that grocers, like landlords, are not the insurers of the safety of those on their premises and the "liability . . . for injuries to invitees resulting from the acts of third parties is limited by the tests of reasonableness and foreseeability." I emphasize that the court there did not remand the case for a jury determination of whether the attack was foreseeable and thereby established a duty.

An Illinois court has also recognized the importance of public policy considerations in the question of landlord liability. "In determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant must be taken into account. *Imposition of duty does not depend on foreseeability alone.*" *Trice v. Chicago Housing Authority*, 14 Ill.App.3d 97, 100, 302 N.E.2d 207, 209 (1973) (emphasis added; footnotes omitted). *Accord, Ellis, supra* at 1382. This type of analysis is for the court, and where the pleadings and discovery evidence do not lay

the proper foundation to permit the court to impose a duty on the defendant, the trial judge is obligated to render summary judgment.

This court must examine relevant factors to determine whether a duty exists in this case. In addition to those factors suggested by *Kline*, other courts have weighed (1) the economic burden which liability would impose on the defendant, (2) the extent to which the risk is a normal one, relative to the defendant's activities, (3) the relative capacity of the parties to bear the loss, (4) the public interest, and (5) administrative convenience.[2] In the public interest it might be well to note first that the continued tightening of economic pressures on landlords to the "benefit" of tenants is highly damaging to both. One need only ponder a moment the consequences of all the recent developments in the law respecting rental of living quarters to see that it is becoming uneconomical to invest or retain capital in rental housing. This decision, with its potential for unfettered jury decision, will surely serve to cause further imbalance in the rental housing market.

A second factor is that the origin of the landlord's duty to maintain safe premises is his ability to exercise greater control over the common areas of the dwelling due to his superior position. *Kline, supra* at 480–81. Under the facts of this case, the landlord does not possess this superiority relative to the harm against which appellants claim he must defend. The evidence indicates Tony Totten was well known to the members of the two families living in the building. There is no evidence that the landlord knew Totten was on the premises or that he had been evicted by Harris the day before the fire. In a two-family dwelling, the tenants' control over their own safety increases because of their special awareness of circumstances against which they ought to guard; commensurately, the landlord's obligation

**2.** Note, *Landowner Owes Invitee No Duty to Provide Police Protection Against Criminal Attack*, 63 Colum.L.Rev. 766, 768 (1963). See also W. Prosser, The Law of Torts § 31 at 152 (3d ed. 1964); Restatement (Second) of Torts §§ 291–93 (1965); Note, *Landlord's Duty to Protect Tenants From Criminal Acts of Third Parties: The View From 1500 Massachusetts Avenue*, 59 Geo.L.J. 1153 (1971).

decreases, particularly where the evidence indicates that he has no knowledge nor ought to have knowledge of these dangers. *See Kline, supra* at 485 n.21. The fact that Harris sought police assistance to evict Totten indicates her assumption of some responsibility in the matter.

A third factor for the court to consider is the legal relation between the landlord and the tenant. *Kline, supra* at 481–82. There was no special lease agreement imposing an obligation on the landlord to provide the security measures of which appellant complains or to provide security that would repel arsonists. Nor was there a decrease in the security that was in effect when the tenants undertook their lease. Although the Housing Regulations are implied in every lease, *Javins v. First National Realty*, 138 U.S.App.D.C. 369, 379, 428 F.2d 1071, 1082, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), the absence of a lock on the outside door is not a violation. *See* D.C. Housing Regulations §§ 3203, 1102 (1979).

A fourth arguable factor is whether the landlord was aware of the risk or whether he ought to be aware of the risk. *Kendall, supra* at 680. Particular crimes as in *Kline, Spar* and *Ramsay*, or particular circumstances as in *Kendall* put the landlord on notice. Here, there is not even sufficient evidence of criminal conduct in the common areas to fulfill the notice requirements of *Spar* and *Ramsay*. In *Kline* there were twenty reported crimes in one year and twenty-five complaints of assault. In this case there are none. Furthermore, in *DeFoe v. W. & J. Sloane*, D.C.Mun.App., 99 A.2d 639 (1953), the predecessor of this court held that the landlord was not liable for damages by an unknown arsonist to tenant's property where the only evidence of circumstances likely to put landlord on notice of his duty to protect was a high incidence of crime in the area. *See also St. Paul Fire & Marine Insurance Co. v. Davis Construction Co.*, D.C.App., 350 A.2d 751 (1976). I do not believe that *Ramsay, Kline* and *Spar* have changed this law; they all require a minimum degree of awareness on the landlord's part before the duty arises.

*See, e. g., Gulf Reston Inc. v. Rogers*, 215 Va. 155, 207 S.E.2d 841 (1974). Furthermore, in another arson case in this court, we held that no duty arises to protect against an incendiary because an act of arson is unforeseeable as a matter of law. *Union Storage Co. v. McIntyre*, D.C.App., 256 A.2d 787 (1969). I believe these cases are dispositive of the issue here.

It is not yet the law in the District of Columbia that in a high crime area, absent evidence of prior crimes or criminal activity, there is an automatic duty to defend persons on the premises from criminal attack. *Cook v. Safeway Stores*, D.C.App., 354 A.2d 507, 509–10 (1976); *Ellis, supra* at 1382. *But cf. Johnston v. Harris*, 387 Mich. 569, 198 N.W.2d 409 (1972). It is appropriate for the court to consider whether the burden is reasonable when determining the issue of duty; that issue is not for the jury. In *Cook*, former Chief Judge Reilly affirmed a directed verdict for the owner of a grocery store against a customer who was injured by a fleeing purse snatcher. In holding that the common law does not impose an obligation upon private enterprise to protect patrons from the "all too familiar" incidents of crime, the court cited several other jurisdictions which also refuse to extend this liability merely because of existing high crime rates. *Cook, supra*. In this case the judge must decide whether there is enough evidence of particular previous crimes in order fairly to require the landlord to answer for injuries to these appellants because the circumstance of high crime in the area is not sufficient to put him on notice. If liability is extended here, must the landlord also defend against injury from kidnapping, extortion, riot, and bombing if the miscreant enters through the front door of the building? Mere allegations of this type are not sufficient to put the case to the jury on the issue of foreseeability. Absence of a front door lock alone is not negligence. *Ramsay, supra* at 512. A landlord need not defend against sudden and unexpected attacks by nonemployees, *Kline, supra* at 481; need not defend against attacks by tenants, *Trice, supra*;

and need not investigate the background of his tenants or those with whom they associate. To impose these duties would expose the landlord to the impossible task of determining what actions are effective to protect against these risks. If the landlord had known about Totten's outbursts, what reasonable action might he have taken? Would he have called the police as Miss Harris did?

The Supreme Court in *Lillie v. Thompson*, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947), demonstrated the proper procedure in this matter. In reversing the circuit court's affirmance of summary judgment for the employer of a woman who was assaulted while working in a train yard, the Court determined that there was a duty because of the ability of the employer to foresee the assault.[3] I must emphasize once again that the Court did not remand the case for a jury determination of foreseeability.

Another rationale of the majority for submitting the case to the jury is that the issue of proximate cause is a jury question. In general, that is correct and the cases cited support that proposition. But none of those cases is similar to this one. This case, and any alleged duty, do not involve the issue of intervening cause. The confusion arises because in many cases the courts will speak alternatively in terms either of duty or proximate cause to circumscribe the liability of the defendant. *Munson v. Otis*, D.C.App., 396 A.2d 994 (1979); *Mozer v. Semenza*, 177 So.2d 880, 883 (Dist.Ct.App. Fla.1965). In certain circumstances the question of proximate cause is just as much a policy question as that of duty. Prosser, *supra*, § 44 at 289 (4th ed.). *See Scott v. Watson*, 278 Md. 160, 170, 359 A.2d 548, 555 (1976), and cases cited there. The reason for this is stated by the majority; that is, the issue of proximate cause is subsumed by that of duty where liability is imposed for the criminal conduct of another. This proposition, however, is not reason to give the

question to the jury; on the contrary, the question should be decided by the court because "[t]he question is essentially one of the defendant's original obligation, and far removed from causation. . . . It must be remembered that the mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant." Prosser, *supra* at 274 (4th ed.). *See also id.* at 283. The criminal assault is not an intervening force because that is exactly the risk which the defendant was charged to guard against. Articulating the issue as one of causation for submission to the jury only leads to confusion. *See id.* at 288; Harper & James, *supra* § 20.5 at 1142–46; *Gaither v. Myers*, 131 U.S.App.D.C. 216, 404 F.2d 216 (1968). Some courts, in fact, have taken the entire issue from the hands of the jury, recognizing that proximate cause is basically a matter of policy. *Pfeiffer v. Standard Gateway Theater Inc.*, 262 Wis. 229, 55 N.W.2d 29 (1952); R. Campbell, *Law of Negligence in Wisconsin*, 1955 Wis.L.Rev. 5, 31–41. The Restatement (Second) of Torts § 448, adopted by this court in *Spar*, reflects this viewpoint; where the actor realizes that fairly definite types of crime are likely, such criminal conduct is not an intervening cause because it is part of the duty to be guarded against. Proximate cause is merely another policy factor used by the courts to limit liability.

Summary judgment in negligence cases is rare. 6 Moore's Federal Practice § 56.-15[.1–0] (1980); *see also Turek v. Yellow Cab*, D.C.Mun.App., 131 A.2d 923 (1957). But where there is no foundation for a reasonable inference of negligence and appellant is entitled to judgment as a matter of law, summary judgment should be granted. *Lillie v. Thompson*, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73; *Ellis, supra; Cook, supra; St. Paul Fire & Marine Insurance Co., supra; Graham v. Safeway Stores Inc.*, D.C.App., 316 A.2d 852 (1974); *Blumenthal*

---

**3.** There was ample evidence that the employer knew of the presence of thieves, tramps, hoboes, and trespassers. In addition, he admitted that a woman was liable to get killed. *Lillie v.*

*Thompson*, 173 F.2d 481, 482 (6th Cir. 1949) (appeal from judgment n.o.v. for defendant after remand from the United States Supreme Court).

*v. Cario Hotel Corp.*, D.C.App., 256 A.2d 400 (1969); *DeFore, supra; Alebrande v. New York City Housing Authority*, 49 Misc.2d 880, 268 N.Y.S.2d 579 (Sup.Ct.App.Term 1966). In this case I would hold that there is no duty as a matter of law and no jury could reasonably infer that defendant was negligent. If the question goes to the jury, landlords may be forced to guard the public safety, and the often quoted expression, "the landlord is not an insurer of his tenants' safety," will be mere pabulum.